UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ESSEX INSURANCE COMPANY, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. C-08-125 |
| | § | |
| JACKIE HINES, *et al*, | § | |
| | § | |
| Defendants. | § | |

**ORDER**

On this day came on to be considered Plaintiff Essex Insurance Company's and Defendant Jackie Hines' competing motions for summary judgment on the issue of whether Essex has a duty to defend Hines in an underlying Texas state court litigation.[1] For the reasons set forth below, the Court hereby GRANTS Hines' motion for summary judgment (D.E. 26) and DENIES Essex's motion for summary judgment. (D.E. 27.)

## I. Jurisdiction

The Court has federal subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, as there is complete diversity between the parties and the amount in controversy exceeds $75,000, exclusive of costs and interests.

---

[1] Cause No. 07-60038-2 of Nueces County Court, Texas

## II. Factual Background

Jackie Hines purchased an insurance policy (the "Policy") from Essex to cover a house she had purchased in Corpus Christi, Texas. (D.E. 27, Ex. A, p. 4.)  Hines paid a $325.00 premium for "Commercial General Liability Coverage" and a $437.00 premium for Commercial Property Coverage. (D.E. 27, Ex. A.)  The Policy lasted for three months, from November 4, 2004, through February 4, 2005. (D.E. 27, Ex. A, p. 3.)

Hines renovated the house and sold it to Robert and Kathryn Childers on August 17, 2005. (D.E. 28, Ex. 3, p. 2.)  A few months later, Kathryn Childers alleges that she "was walking in the residence when the heel of her shoe went through the hardwood floors in several sporadic locations." (D.E. 28, Ex. 3, p. 2.)  The Childers contend that Hines improperly installed new foundation piers, "failed to locate and remove wood rot in the flooring, failed to repair the sub-flooring of the house and failed to properly ventilate the foundation of the residence." (D.E. 28, Ex. 3, p. 3.)

## III. Procedural Background

The Childers sued Hines for breach of contract, common law fraud, statutory fraud, negligence, gross negligence, and deceptive trade practices under several provisions of the Texas Business and Commerce Code § 17.41 *et seq.* (D.E. 28, Ex. 3.)[2]  Hines requested that Essex defend her in the Childers' lawsuit. (D.E. 1, p. 8.)  Hines limited her request for defense by Essex to the Childers' claim of negligence. (D.E. 20.)  Essex denied Hines' request, and brought suit for declaratory judgment. (D.E. 1.)  Hines and Essex have both moved for Summary Judgment on the issue of Essex's duty to defend Hines in the underlying lawsuit. (D.E. 26, 27.)

---

[2] Robert Childers and Kathryn Childers v. Jackie Hines, Cause No. 07-60038-2 in Nueces County Court, Texas. (D.E. 9)

### IV. Discussion

#### a. Summary Judgment Standard

Federal Rule of Civil Procedure 56 states that summary judgment is appropriate if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). The substantive law identifies which facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ellison v. Software Spectrum, Inc., 85 F.3d 187, 189 (5th Cir. 1996). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson, 477 U.S. at 248. A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; see also Judwin Props., Inc., v. U.S. Fire Ins. Co., 973 F.2d 432, 435 (5th Cir. 1992).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Wallace v. Texas Tech. Univ., 80 F.3d 1042, 1046-1047 (5th Cir. 1996). If the nonmovant bears the burden of proof on a claim, the moving party may discharge its burden by showing that there is an absence of evidence to support the nonmovant's case. See Celotex Corp., 477 U.S. at 325; Ocean Energy II, Inc. v. Alexander & Alexander, Inc., 868 F.2d 740, 747 (5th Cir. 1989).

Once the moving party has carried its burden, the nonmovant "may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 270

(1968); see also Schaefer v. Gulf Coast Reg'l Blood Ctr., 10 F.3d 327, 330 (5th Cir. 1994) (stating that nonmoving party must "produce affirmative evidence and specific facts" demonstrating a genuine issue).

When the parties have submitted evidence of conflicting facts, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Willis v. Roche Biomedical Laboratories, Inc., 61 F.3d 313, 315 (5th Cir. 1995). Summary judgment is not appropriate unless, viewing the evidence in the light most favorable to the nonmoving party, no reasonable jury could return a verdict for that party. See, e.g., Rubinstein v. Administrators of the Tulane Educ. Fund, 218 F.3d 392, 399 (5th Cir. 2000).

### b.     Insurer's Duty to Defend

In determining whether an insurer has a duty to defend an insured, Texas courts follow the "eight corners" or "complaint allegation" rule. Canutillo Indep. Sch. Dist. v. Nat'l Union Fire Ins. Co., 99 F.3d 695, 701 (5th Cir. 1996); see also Gulf Chem. & Metallurgical Corp. v. Associated Metals & Minerals Corp., 1 F.2d 365, 369 (5th Cir. 1993); Snug Harbor, Ltd. v. Zurich Ins., 968 F.2d 538, 545 n.24 (5th Cir. 1992). Pursuant to the Eight Corners Rule, this Court may examine only "the allegations in the pleadings and the language of the insurance policy" in determining whether the insurance company has a duty to defend. King v. Dallas Fire Ins. Co., 85 S.W.3d 185,187 (Tex. 2002). The complaint to be used in the Eight Corners Rule is the "latest amended pleading upon which the insurer based its refusal to defend the action." Canutillo, 99 F.3d at 701; see also Rhodes v. Chicago Ins. Co., 719 F.2d 116, 117 (5th Cir. 1983). Pursuant to the Eight Corners Rule, the duty to defend is not affected by facts ascertained before the underlying lawsuit began, by facts developed during the course of the underlying litigation, or by the ultimate outcome of the underlying case. Canutillo, 99 F.3d at 701.

So long as the complaint alleges at least one cause of action within the Policy's coverage, the insurer must defend the insured.  See Canutillo, 99 F.3d at 701 ("An insurer is obligated to defend an insured as long as the complaint alleges at least one cause of action within the policy's coverage."); Rhodes, 719 F.2d at 119; Am. Physicians Ins. Exch. v. Garcia, 876 S.W.2d 842, 848 (Tex. 1994); General Star Indem. Co. v. Gulf Coast Marine Associates, Inc., 252 S.W.3d 450, 455 (Tex.App. 2008) ("If an insurer has a duty to defend its insured against any portion of the underlying suit, then the insurer is required to defend the entire suit.")  When applying the Eight Corners Rule, courts are to presume that the facts alleged in the underlying complaint are true, and courts are to liberally construe the allegations in favor of the insured. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Merchs. Fast Motor Lines, Inc., 939 S.W.2d 139, 141 (Tex. 1997) Doubts are to be resolved in favor of the duty to defend.  Id.; King v. Dallas Fire Ins. Co., 85 S.W.3d 185, 187 (Tex. 2002);  Heyden Newport Chem. Corp. v. S. Gen. Ins. Co., 387 S.W.2d 22, 24 (Tex. 1965).

    **c.**    **Insurance Contract Interpretation**

A district court's interpretation of an insurance contract is a question of law.  See Principal Health Care of La., Inc. v. Lewer Agency, Inc., 38 F.3d 240, 242 (5th Cir. 1994); F.D.I.C. v. Mijalis, 15 F.3d 1314, 1319 (5th Cir. 1994).  Texas rules of contract interpretation control in this diversity case.  See Canutillo, 99 F.3d at 700; Amica Mut. Ins. Co. v. Moak, 55 F.3d 1093, 1095 (5th Cir. 1995) ("Insurance policies are contracts and are governed by the principles of interpretation applicable to contracts.  State law rules of construction govern in diversity cases.") (citations omitted).  Under Texas law, the interpretation of insurance contracts is governed by the same rules that apply to contracts generally.  See Forbau v. Aetna Life Ins.

Co., 876 S.W.2d 132, 133 (Tex. 1994); Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. CBI Indus., Inc., 907 S.W.2d 517, 520 (Tex. 1995).

In determining the scope of coverage, courts "examine the policy as a whole to ascertain the true intent of the parties." Utica Nat'l Ins. Co. of Texas v. Am. Indemnity Co., 141 S.W.3d 198, 202 (Tex. 2004); see also Nat'l Union v. CBI Indus., 907 S.W.2d at 520 ("The primary concern of a court in construing a written contract is to ascertain the true intent of the parties as expressed in the instrument."); Mid-Century Ins. Co. of Texas v. Lindsey, 997 S.W.2d 153, 158 (Tex. 1999); Forbau, 876 S.W.2d at 133; Barnett v. Aetna Life Ins. Co., 723 S.W.2d 663, 666 (Tex. 1987).

"When the terms of an insurance policy are plain, definite, and unambiguous, a court may not vary those terms. … When no ambiguity exists, a court must give the words used their plain meaning." Nat'l Union Fire Ins. Co. of Pittsburgh, Pennsylvania v. CAN Ins., 28 F.3d 29, 32 (5th Cir. 1994) (citations omitted). If an insurance contract "is susceptible to more than one reasonable interpretation, a court will resolve any ambiguity in favor of coverage." Certain Underwriters at Lloyd's London v. C.A. Turner Const. Co., Inc., 112 F.3d 184 (5th Cir. 1997). "Generally, Texas law requires any ambiguity in the insurance policy to be interpreted in favor of coverage. Words and clauses of insurance contracts are strictly construed against the insurer, and if a word or clause is capable of more than one reasonable meaning, then the meaning favoring the insured must be adopted. … Even if the insurer's construction is more reasonable than the insured's, the insured's must prevail." Burditt v. West American Ins. Co., 86 F.3d 475, 477 (5th Cir. 1996). See also Mid-Continent Cas. Co. v. Swift Energy Co., 206 F.3d 487, 492 ("[I]nsurance policies are strictly construed in favor of coverage."); Vernon v. Aetna Ins. Co.,

301 F.2d 86, 90 ("[P]olicies are to be construed most strongly against the insurer and so as to avoid a forfeiture, if possible").

### V. Legal Analysis

In order to determine whether Essex has a duty to defend Hines under the Eight Corners Rule, this Court will analyze only "the allegations in the pleadings and the language of the insurance policy." King v. Dallas Fire Ins. Co., 85 S.W.3d 185,187 (Tex. 2002).

#### 1. Pleadings

Although the Childers have sued Hines for breach of contract, common law fraud, statutory fraud, negligence, gross negligence, and deceptive trade practices under several provisions of the Texas Business and Commerce Code § 17.41, Hines has limited her request for defense by Essex to the Childers' claim of negligence. (D.E. 1, Ex. A; D.E. 20). Therefore, the only relevant question is whether or not Essex has a duty to defend Hines on the Childers' claim for negligence. If the answer is yes, then Essex has a duty to defend Ms. Hines in the underlying lawsuit as a whole, because "[a]n insurer is obligated to defend an insured as long as the complaint alleges at least one cause of action within the policy's coverage." Canutillo Indep. Sch. Dist. V. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 99 F.3d 695, 701 (5th Cir. 1996).

#### 2. Insurance Policy

Essex argues that the Childers' claim of negligence against Hines is excluded from coverage under the Policy that Hines purchased because (1) construction work is not covered by the Policy, (2) even if construction work is covered, this particular claim of negligence is excluded, and (3) the alleged negligence took place outside the policy period. (D.E. 27) As discussed below, Essex's arguments lack merit.

### i. The Policy covers risks associated with construction work

Essex contends that the Policy does not cover Hines for construction work. (D.E. 27, p. 7.) In support of this assertion, Essex points to a form in the Policy entitled "Commercial General Liability Coverage Part Supplemental Declarations" which states that the "Description of Hazard/Insured Classification" is "DWELLING-SINGLE FAMILY-LESSOR'S RISK ONLY." (D.E. 27 Ex. A p. 33.) Because this form refers to "lessor's risk only," Essex contends that Hines was not covered for construction work. Moreover, the form entitled "Classification Limitation Endorsement" limits coverage to "only … those operations specified in the application for insurance on file with the company and described under the 'description' or 'classification' on the declarations policy." (D.E. 27 Ex. A p. 43.) Essex contends that this is further support for the proposition that Hines is covered only for lessor's risk and not for claims associated with repairs and construction of the premises. (D.E. 27, p. 7.)

Additionally, Essex points to another section entitled "Limitation of Coverage to Designated Premises or Project," which states that "[t]his insurance applies only to 'bodily injury[,]' 'property damage[,]' … arising out of: (1) the ownership, maintenance, or use of the premises shown in the Schedule and operations necessary or incidental to those premises; or (2) the project shown in the Schedule." (D.E. 27 Ex. A p. 68) Essex argues that the Childers' allegations "concern construction work, not ownership, maintenance or use" of the house. (D.E. 28 p. 8)

While the above-quoted language arguably suggests that construction work is not covered by the Policy, another section entitled "Renovated Property Endorsement" suggests just the opposite. (D.E. 27 Ex. A p. 6.) This section specifically states: "This policy covers a renovation project. This policy will cover the usable existing structure which predates the renovation

8 / 11

project as insured property." (D.E. 27 Ex. A p. 6)  Because it refers to a "renovation project" this section suggests that construction work is covered by the Policy.  "[W]hen the language used is subject to two or more reasonable interpretations, the construction which affords coverage will be adopted.  The policy of strict construction against the insurer is especially strong when the court is dealing with exceptions and words of limitation." (citations omitted) <u>Blaylock v. American Guarantee Bank Liability Ins.</u>, 632 S.W.2d 719, 721 (Tex. 1982.)  In fact, the interpretation favoring coverage will be adopted even if Essex's interpretation is more reasonable, so long as Hines' interpretation is not unreasonable. <u>Evanston Ins. Co. v. ATOFINA Petrochemicals, Inc.</u>, 256 S.W. 3d 660, 668 (Tex. 2008) ("When interpreting an insurance contract, we must adopt the construction of an exclusionary clause urged by the insured as long as that construction is not unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent.  Exceptions or limitations on liability are strictly construed against the insurer and in favor of the insured, and an intent to exclude coverage must be expressed in clear and unambiguous language.") (citations omitted).

### ii. **This particular construction work was covered by the Policy**

Essex argues in the alternative, that even if the Policy does cover construction work, it specifically excludes the negligent work alleged by the Childers. (D.E. 27 p. 10.)  For this proposition, Essex quotes three sections of the Policy.  The first section excludes from coverage property damage that is "expected or intended from the standpoint of the insured." (D.E. 27 Ex. A p. 50 sec. 2(a).)  The second section excludes from coverage "property damage to … that particular part of any property that must be restored, repaired or replaced because [Hines'] work was incorrectly performed on it." (D.E. 27, Ex. A p. 52 sec. J(6).)  The third section excludes

from coverage "property damage to [Hines'] work arising out of it or any part of it." (D.E. 27, Ex. A p. 53 sec. l.)

However, the first section excluding coverage applies only to "expected or intended injury." (D.E. 27, Ex. A p. 50.) Therefore, this exclusion does not apply to the underlying claim of negligence in the current case because negligence does not involve an intentional act. Essex Ins. Co. v. Greenville Convalescent Home Inc., 236 Fed.Appx. 49, 53 (5th Cir. 2007) (affirming the district court holding that the "'expected or intended injury' exclusion … did not apply to the underlying claims because the claims primarily sounded in negligence and medical malpractice, which do not involve intentional acts.")

Moreover, all of the above-quoted sections in the Policy are attached to the above-discussed endorsement entitled "Renovated Property Endorsement." Generally, an endorsement attached to an insurance policy becomes merged in with the original policy. El-Habr v. Mountain States Mut. Cas. Co., 626 S.W.2d 171, 172 (Tex.App. 1981). As noted above, the endorsement specifically states that "[t]his policy covers a renovation project." (D.E. 17, Ex. 3 p. 12.) This language implies that construction work is covered by the Policy. "In Texas, when an insurance policy is ambiguous or inconsistent, the construction that would afford coverage to the insured must govern." Mid-Continent Cas. Co. v. Swift Energy Co., 206 F.3d 487, 491 (5th Cir. 2000). Indeed, the interpretation favoring coverage will be adopted even if Essex's interpretation is more reasonable, so long as Hines' interpretation is not unreasonable. Evanston Ins. Co. v. ATOFINA Petrochemicals, Inc., 256 S.W. 3d 660, 668 (Tex. 2008). Given the language in the attached endorsement, the Policy could reasonably be interpreted to cover the construction work negligence alleged by the Childers.

### iii. The alleged negligence occurred during the Policy period

Lastly, Essex contends that the alleged acts of negligence took place after the policy period ended, so it owes no duty to defend Hines. (D.E. 27, p. 12.) The Policy was in effect for three months, ending on February 4, 2005. (D.E. 27, Ex. A, p. 3.) The Childers purchased their house from Hines on August 17, 2005. (D.E. 28, p. 12.) By its own terms, the Policy limits coverage to property damage that "occurs during the policy period." (D.E. 28, Ex. 2, p. 49.) The Childers allege that Hines "renovated the residence from November 2004 through February 2005" and that Hines was "negligent in renovating the home by performing work that was not good and workmanlike." (D.E. 28 Ex. 3 p. 3.) Therefore, the alleged negligence occurred during the Policy period. Based on the above analysis, the Policy covers the Childers' allegation against Hines for negligence. Therefore, Essex owes Hines a duty to defend Hines in the underlying litigation.

## VI. Conclusion

For the reasons set forth above, the Court hereby GRANTS Hines' motion for summary judgment on Essex's duty to defend Hines (D.E. 26) and hereby DENIES Essex's motion for summary judgment on the same duty to defend issue. (D.E. 27.)

SIGNED and ORDERED this 16th day of March, 2009.

_____
Janis Graham Jack
United States District Judge